**JOSEPH BANCROFT & SONS CO.**

v.

**BREWSTER FINISHING CO., Inc.**

**No. 11177.**

United States Court of Appeals
Third Circuit.

Argued Jan. 8, 1954.

Decided March 8, 1954.

missed the complaint. Appellant seeks to have that finding reversed.

The claim,[1] which is the key to the decision, teaches a process of imparting a mechanical finish to textile fabrics which is relatively fast to repeated dry cleaning or washing. The method disclosed consists of four sequential steps.

1. Impregnating the fibers of the fabric with an aqueous resin-forming solution.

2. Drying the fibers slightly or to a moist condition.

3. Changing the form and relative disposition of the fibers to impart an ornamental texture by means of a heated calender.

4. Curing or hardening the resin by a heat treatment.

The district court in its opinion [2] succinctly tells us the important details of the patent:

"The Bener specifications acknowledge that prior to the Bener application fabrics were rendered resistive against wrinkling by introducing artificial resins into the interior of the fibers. Bener proposed to change the form and relative disposition of the fibers by calendering after impregnation to impart to the fabric various ornamental textures. These textures stand out in bold relief if the calender roll is engraved, or if the fabric is passed through a Schreiner-calender. Stamping calenders are also suggested, as are smooth calendars for obtaining gloss effects. A broad range of artificial resins, fast to light, odorless and colorless, are sug-

Alfred C. Aurich, Philadelphia, Pa. (Wm. H. Campbell, Jr., Newark, N. J., Robert H. Richards, Jr., Wilmington, Del., Harvey L. Lechner, Philadelphia, Pa., on the brief), for appellant.

Benjamin Sweedler, New York City (Ira J. Schuster, New York City, on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

In this patent infringement suit, the district court found the patent invalid for lack of invention and thereupon dis-

1. The patent is United States Letters Patent No. 2,121,005, issued June 21, 1939, to Christian Bener. It contains three claims, Claims 2 and 3, however, being the only ones relied on in the district court. Although no evidence was introduced with respect to Claim 1, the district court, upon the basis of defendant's counterclaim, held all three claims invalid. Appellant states in its brief filed in this appeal that it is content to let the question as to the validity of Claim 1 rest on this court's decision with respect to Claim 2. Claim 2 is a process claim; Claim 3 is a finished product produced thereby.

2. In an opinion appearing in D.C.D.N.J. 1953, 113 F.Supp. 714, 718, Judge Modarelli has so thoroughly analyzed the details of the patent in suit and its relation to the prior art that it is unnecessary that we cover that ground again. We need indicate only in outline form that his decision was correct.

gested. Carbamide-aldehyde resins, urea and thiourea condensation products alone or in combination with sizing or filling materials, are mentioned, and certain specific formulations are set forth, viz.: A 20% aqueous solution of carbamide resin containing 0.5% tartaric acid when treating cotton muslins. A 25% solution of dimethyl-urea for cottons. A solution of 225 grams dimethylol-urea and 75 grams thiourea with 2% boric acid for satins.

"The resin-impregnated fabric leaves the calender with the ornamental design impressed. If the resins are now cured, i.e., hardened, the design is rendered durable. The curing is effected by known methods, i.e., passing the fabric over heated calenders or drying cylinders or through a heated drying chamber."

The findings of fact of the district court are incorporated in its opinion. The court analyzed a series of prior patents and then concluded:

"In the textile processing industry, the art of impregnating fabrics with thermosetting resins, then curing to effect a reasonably permanent relative disposition of fibers, was well known prior to Bener, viz., TBL, Rossiter and Davis. Heberlein achieved the same effect, but claimed the resins and metals were adsorbed by rather than absorbed into the fibers in his process. Known too were processes of embossing fabrics impregnated with egg albumen or various natural or synthetic resins, viz., Garnier and Cadgene. The art of embossing coated fabrics was long practiced before Bener, e.g., Wilson.[3]

"One skilled in the art of textile processing could readily achieve Bener's process and product from a study of Garnier's process for embossing textiles using egg albumen or certain resins, and from a study of the sequential steps and suggested resins of TBL, Heberlein, and Rossiter and Davis. * * *"

Appellant argues that the finding is bad because the court relied primarily on a patent, Garnier, which had been discarded by defendant in the trial, and this led the court to adopt a theory not advanced by defendant. We need not discuss the legal consequences of that contention because we are convinced from an examination of the record that the theory upon which the district court decided the case was one which the defense urged throughout the trial: the prior art disclosed the sequential steps of Bener's process, the resin suggested by Bener, and it was obvious to one skilled in the art to combine the two as did Bener. That this is so can be demonstrated by quoting from the testimony of defendant's expert:

"Q. Now, Dr. Powers, in your opinion is there any invention in using, for example, the urea formaldehyde resin of British Patent 291,-473 or the urea formaldehyde of the U. S. Zanker Patent 1,925,914 in the processes of this group of patents beginning with No. 1,352,163 and ending with 431,712 about which you have just testified? A. The processes are essentially the same, that is, impregnating or coating or applying to the surface of a fabric a solution or dispersion of a resinous material, the embossing or calendering and setting. The later patents disclose the urea formaldehyde resins which were distinct in their easy, convenient solubility in water.

3. Plaintiff's expert testified that each of the four steps of Bener were old in the art, and at oral argument here plaintiff's counsel conceded that that was the case. This makes it clear that the only real question remaining is whether the idea, and its reduction to practice, of combining those four steps as Bener did was obvious to one skilled in the art. As shown hereafter, that question was decided against plaintiff by the district court upon adequate evidence.

"Q. Now, what would you say as to whether there is invention in using the urea formaldehyde resin of the later patents in these older processes? A. It would seem to me to be an obvious improvement or step to take the older process and adapt the newer resins as they became available. The steps are clearly outlined as treating, embossing or calendering, and setting.

"Q. Now that you have analyzed the prior art, Dr. Powers, will you please give the Court your opinion as to whether the Bener patent Claims 2 and 3 define an invention? A. It does not seem to me that Claims 2 and 3 disclose either a new use of new materials or a new step, series of steps, involving materials. The art clearly shows the step of impregnating, of drying, of embossing or calendering, and of curing. The art clearly shows the use of water soluble resin solutions capable of increasing the resistivity of the fibre. That is clearly shown in the patents and art available at the time this patent was filed."

As we understand appellant's argument, it is urged, however, that this testimony cannot be used to support the court's finding since the question contains no reference to Garnier, and the court's finding was primarily based on Garnier. Appellant is unduly circumscribing the court's finding. It is abundantly clear that the reference to Garnier was because it was typical of the sequential-step process of the prior art, and not that it was the sole source of the prior art. Even if it had relied primarily on Garnier, such reliance could hardly constitute reversible error, for admittedly it was in evidence as part of the prior art, and in defendant's brief presented to the court after trial, it was urged as one of a series of prior art patents.

We find no merit in the contention that the court disregarded the commercial success of the patent in finding it invalid. From the other evidence in the case, the court was in no doubt of the invalidity and rightly disregarded the disputed evidence of such success. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235.

The judgment will be affirmed.